UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
GALINA WOODLAND,

                Plaintiff,

– against –

RHEEM MANUFACTURING COMPANY LONG
TERM DISABILITY PLAN, RHEEM
MANUFACTURING COMPANY MEDICAL PLAN,
RHEEM MANUFACTURING COMPANY and THE
PRUDENTIAL INSURANCE COMPANY OF AMERICA,

                Defendants.
---------------------------------------------------------X

JUDGE CASTEL

07 CV 3210

Civil Action No.:

COMPLAINT

APR 20 2007
U.S.D.C. S.D.N.Y.
CASHIERS

      Plaintiff, Galina Woodland, by her attorneys, DEHAAN BUSSE LLP, for her Complaint against the Defendants, Rheem Manufacturing Company Long Term Disability Plan (the "LTD Plan"), Rheem Manufacturing Company Medical Plan (the "Medical Plan"), Rheem Manufacturing Company ("Rheem") and Prudential Insurance Company of America ("Prudential"), hereby alleges as follows:

## JURISDICTION AND VENUE

      1.    Jurisdiction of the Court is based upon 29 U.S.C. §§ 1132(e)(1) and 1132(f), which give the District Courts jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan. In addition, this action may be brought before this Court pursuant to 28 U.S.C. § 1331, which gives the District Court jurisdiction over actions that arise under the laws of the United States.

      2.    Under the Employee Retirement Income Security Act of 1974 (29 U.S.C. §§ 1001, et seq.) ("ERISA"), the long-term disability plan at issue in this litigation must contain provisions for administrative or internal appeal of denial of benefits. Plaintiff has exhausted all administrative avenues of appeal and has received a final denial. Therefore, this matter is

properly before this court for *de novo* judicial review under <u>Firestone Tire & Rubber Co. v. Bruch,</u> 489 U.S. 101 (1989).

3. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) which allows an action under Title I of ERISA, as amended, to be brought in the district where the plan is administered, where the breach took place or where a defendant resides or may be found.

4. Rheem is the named Plan Administrator and had a home office located at 405 Lexington Avenue, 22nd Floor, New York, New York 10174, at the time Plaintiff became disabled. Therefore, venue is proper in the Southern District of New York because that is where the LTD Plan was administered.

## NATURE OF ACTION

5. This is a claim seeking a declaration that Plaintiff is entitled to disability income benefits pursuant to the terms and conditions of an employee benefit welfare plan.

6. The LTD Plan provides long term disability benefits to employees of Rheem. As such, the LTD Plan is an employee benefit welfare plan established and maintained by an employer or employee organization for the benefit of its employees, and ERISA applies to this action. Said benefits were effective at all times relevant hereto.

7. Upon information and belief, claims for benefits are administered and paid through a Long Term Disability Policy, issued by Defendant, Prudential. Defendant, Prudential, has made all of the claims decisions in this matter.

8. This is also a claim seeking a declaration that Plaintiff is entitled to benefits, in the form of continuation of coverage under the terms and conditions of the Medical Plan

## STANDARD OF REVIEW

9. The Rheem Manufacturing Company Disability Income Program Summary Plan Description does not contain a grant of discretion. As such the Court conduct a *de novo* review of the denial of Plaintiff's claim for benefits.

10. As such, this Court must conduct a *de novo* review of the denial of Plaintiff's claim under Firestone Tire & Rubber Co. v. Bruch.

## THE PARTIES

11. Plaintiff was born in September 1937, is presently 69 years old, and is a resident of Ronkonkoma, New York.

12. Defendant, the LTD Plan, is an employee benefit welfare plan, as defined by ERISA. Upon information and belief, Rheem is the named Plan Administrator and the agent for service of legal process. At the time of Plaintiff's disability, Rheem's home office was located at 405 Lexington Avenue, 22nd Floor, New York, New York 10174. Currently, Rheem's home office is located at 1100 Abernathy Road, Suite 1400, Atlanta, GA 30328.

13. Defendant, the Medical Plan, is an employee benefit welfare plan, as defined by ERISA. Upon information and belief, Rheem is the named Plan Administrator and the agent for service of legal process for the Medical Plan. At the time of Plaintiff's disability, Rheem's home office was located at 405 Lexington Avenue, 22nd Floor, New York, New York 10174. Currently, Rheem's home office is located at 1100 Abernathy Road, Suite 1400, Atlanta, GA 30328.

14. Defendant, Rheem, was Plaintiff's employer at the time she became disabled. Rheem is the named Plan Administrator and the agent for service of legal process. At the time of Plaintiff's disability, Rheem's home office was located at 405 Lexington Avenue, 22nd Floor, New York, New York 10174. Currently, Rheem's home office is located at 1100 Abernathy Road, Suite 1400, Atlanta, GA 30328.

15. Defendant, Prudential, is an incorporated insurance company licensed to conduct the business of insurance in New York. Upon information and belief, Prudential is the named Claims Administrator for the LTD Plan. Prudential's address is 213 Washington Street, 9th Floor, Newark, New Jersey 07102.

## STATEMENT OF FACTS

### Plaintiff's Occupation:

16. Plaintiff became an employee of Rheem on or about January 23, 1995. Plaintiff continued working for Rheem through March 20, 2001, on which date she became disabled. As such, she was a covered participant in the LTD Plan.

17. After receiving her doctor's permission, Plaintiff's attempted to return to work on October 29, 2001. She performed modified duties in an effort to allow her to increase her number of hours worked to a full-time schedule. However, this work attempt was short and ultimately unsuccessful as a result of her numerous medical conditions.

18. Prior to and including March 20, 2001, Plaintiff was employed by Rheem as a Legal Secretary. In that capacity, she was responsible for preparing legal papers and correspondence of legal nature; constant keyboard use; reviewing law journals and other legal publications to identify court decisions pertinent to pending cases; and submitting articles to company officials.

19. According to the DICTIONARY OF OCCUPATIONAL TITLES (4th Ed. 1991 Rev.)(the "DOT"), Plaintiff's occupation was considered sedentary work. Sedentary work is defined as follows:

> STRENGTH: Sedentary Work – Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

20. Plaintiff's pre-disability income was approximately $45,000.00 per year.

21. For the period beginning prior to March 20, 2001, and at all relevant times hereto, Plaintiff, as a regular employee of Rheem, was covered as a participant under the LTD Plan.

<u>The Terms of the LTD Plan</u>:

22. Upon information and belief, the LTD Plan provides benefits to its participants through a Group Disability Policy (the "Group Policy") issued and administered by Prudential. However, Plaintiff was not provided with a copy of the LTD Policy issued by Prudential. Instead, Plaintiff was provided with a Disability Income Program Summary Plan Description issued by Rheem. As such, the below terms are from the Rheem Manufacturing Company Disability Income Program Summary Plan Description (the "SPD").

23. Prudential, as the insurer of the LTD Plan, pays LTD benefits out of its own coffers. In this position, Prudential could significantly reduce its operating expenses, and increase its profits, simply by denying claims. This would be a direct dollar-for-dollar effect. As such, Prudential is operating under a significant conflict of interest which had a material effect on its decision on this claim.

24. The SPD provides for payment of monthly benefits to eligible employees, and is designed to protect employees against a loss of earned income during periods of extended disability. Immediately prior to the onset of her disability, Plaintiff was an active employee working a minimum of 30 hours per week, and as such, was covered under the LTD Plan.

25. The monthly benefit is determined based on a set percentage (60%) of the employee's pre-disability earnings, with a maximum monthly benefit of $7,500. The monthly benefit is reduced by "Other Income Benefits," which includes benefits received pursuant to the Social Security Act.

26. In Plaintiff's case, the SPD provides for a benefit of approximately $2,250 per month, less the amount of "Other Income Benefits," as defined by the SPD.

27. The SPD also provides for a waiver of premium "during any period of total disability while Monthly Benefits are payable to you."

28. Long Term Disability benefits are to commence after an "Elimination Period," of "180 days of continuous total disability."

29. In the instant matter, Plaintiff's Long Term Disability benefits commenced on or about September 17, 2001, following the expiration of the Elimination Period and the exhaustion of Plaintiff's STD benefits.

30. Since Plaintiff's disability began after age 60, she is entitled to LTD benefits for five (5) years.

31. The SPD defines "Disability" as follows:

*"Total Disability" or "Totally Disabled" means you:*

- *are completely and continuously unable to do each of the material duties of your job; and*

- *require the regular care and attendance of a Physician.*

*However, after the first 24 months of benefit payments, you must also be completely and continuously unable to do the material duties of any gainful work or service for which you are reasonably qualified by training, education or experience.*

32. The SPD requires Plaintiff to apply for apply "Other Income Benefits," which includes benefits received pursuant to the Social Security Act.

Plaintiff's Disability:

33. Plaintiff was forced to stop working on March 20, 2001, due to Carpal Tunnel Syndrome, Trigger Fingers, Transient Ischemic Attacks ("TIA"), Non-Insulin Dependent Diabetes Mellitus, Frequent Headaches, Fatigue and Hypertension.

34. With regard to her Carpal Tunnel Syndrome and Trigger Fingers, Ms. Woodland underwent Trigger Finger Operations on her right thumb, left thumb, left ring finger, left middle finger and right index finger in 1984, 1996, 1999, December 2001, and August 2002, respectively.

35. In a report dated March 20, 2002, Plaintiff's treating Orthopedist and Hand Surgeon noted decreased light touch sensation in the median nerve distributions bilaterally, positive Tinel's sign over both carpal tunnels, and that an EMG is consistent with carpal tunnel

syndrome bilaterally. The Treating Orthopedist recommended left carpal tunnel release, followed by a right carpal tunnel release in the near future.

36. Plaintiff has also undergone extensive physical therapy for her Trigger Fingers and Carpal Tunnel Syndrome from December 2001, through February 2002.

37. Ms. Woodland's Trigger Fingers and her Carpal Tunnel Syndromes render her hand's nearly useless when performing the most basic activities.

38. With regard to her neurologic condition, Plaintiff's suffers from Transient Ischemic Attacks. According to emedicinehealth.com, "a transient ischemic attack (TIA), or mini-stroke, occurs when the supply of oxygen is cut off to an area of the brain." *See* http://www.emedicinehealth.com/transient_ischemic_attack_mini-stroke/article_em.htm.

39. Her treating neurologist noted that Plaintiff suffered from her first TIA on March 20, 2001. According to a co-worker, from 12:30 pm until 3:00 pm, Ms. Woodland was acting inappropriately – she was staring, could not figure out how to put her coat on, was unable to figure out how to walk through the revolving door, was unable to interpret the menu at lunch and she fell asleep at the lunch table. Upon returning from lunch, Plaintiff was placed in a small, dark room and the next thing she knew, it was 3:00 pm and she could not figure out why she was in the small room.

40. Plaintiff immediately saw a neurologist, whose impression was that Ms. Woodland suffered from a transient global amnesia event, possible TIA or complex seizure.

41. Upon examination on December 5, 2001, Plaintiff's other treating neurologist noted that Plaintiff had difficulty expressing herself and had difficulty with memory. The treating neurologist diagnosed Ms. Woodland with transient global amnesia secondary to TIA with permanent cognitive dysfunction, diabetes, elevated cholesterol and hypertension. Based on this examination, the treating neurologist stated, "In my opinion, she is disabled from doing cognitive-type labor."

42. In a subsequent report dated January 7, 2002, Plaintiff's treating neurologist, noted complaints of short term memory loss, headaches, confusion and fatigue. The neurologist again noted difficulty with speech and memory and stated that Ms. Woodland is disabled from

cognitive-type work. The treating neurologist reiterated his conclusions in a note dated March 27, 2002.

43. In a Stroke Impairment Questionnaire dated January 16, 2002, the treating neurologist diagnosed Plaintiff with persistent cognitive dysfunction with a guarded prognosis. It was noted that Ms. Woodland suffers from a loss of intellectual ability, difficulty concentrating, headaches, difficulty remembering, confusion, emotional lability, personality change, difficulty solving problems and problems with judgment. The treating neurologist also noted that Plaintiff's symptoms constantly interfere with attention and concentration and that she is incapable of even low stress.

44. Subsequently, Plaintiff went to the Emergency Room at Brookhaven Memorial Hospital on January 22, 2002, after experiencing symptoms of blood rushing in her head, headaches and tongue numbness for approximately 48 hours. She was treated and released the same day with a diagnosis of TIA.

45. Plaintiff has also treated with an endocrinologist for her Diabetes Mellitus.

46. Furthermore, even Plaintiff's employer, Rheem, believes that she is totally disabled. In a letter dated July 10, 2003, the Employee Benefits Coordinator from Rheem stated,

> This letter is to clarify that Mrs. Galina Woodland was determined by Rheem to be unable to conduct the material duties of her position as Legal Secretary based upon information provided by both Mrs. Woodland and her physician, therefore, she was placed on disability leave and subsequently Ms. Woodland retired from Rheem due to her disabling condition.

47. Plaintiff has received, and continues to receive, appropriate medical treatment for her medical conditions from her treating physicians.

### PLAINTIFF'S FIRST CAUSE OF ACTION FOR LONG-TERM DISABILITY BENEFITS

48. With regard to Plaintiff's claims for benefits under the LTD Plan, she continued to work through March 20, 2001.

49. On March 20, 2001, Plaintiff was forced to stop working because of Carpal Tunnel Syndrome, Trigger Fingers, Transient Ischemic Attacks ("TIA"), Non-Insulin Dependent Diabetes Mellitus, Frequent Headaches, Fatigue and Hypertension.

50. Plaintiff received STD benefits for the full 26 weeks, through September 25, 2001.

51. In compliance with the terms and conditions of the LTD Plan, Plaintiff timely applied for long-term disability insurance benefits.

52. By letter dated September 27, 2001, Prudential notified Plaintiff that it was terminating her claim for STD benefits effective August 16, 2001 and disallowing her claim for LTD benefits.

53. By letter dated October 27, 2001, Plaintiff appealed this adverse decision.

54. On November 27, 2001, Prudential notified Ms. Woodland that it was approving her claim for STD benefits through September 25, 2001, the maximum period, and approving her claim for LTD benefits from September 17, 2001, through October 28, 2001.

55. Prudential terminated Plaintiff's benefits effective October 29, 2001, because of the carrier's erroneous belief that Ms. Woodland returned to work full time on October 29, 2001.

56. On or about December 12, 2001, Plaintiff retained counsel to represent her in her appeal of Prudential adverse determination.

57. By letter dated March 26, 2002, Plaintiff, through counsel, formally appealed Prudential's November 27, 2001, adverse determination and requested that Plaintiff's claim remain opened pending the submission of additional comments and medical documentation.

58. By letter dated June 5, 2003, Plaintiff's counsel submitted the additional comments and medical documentation regarding Prudential November 27, 2001, termination.

59. Plaintiff's counsel noted that while Ms. Woodland did <u>attempt</u> to return to a full-time work schedule in her former position with Rheem on October 29, 2001, however she was unable to resume all of her regular duties due to her medical conditions.

60. By letter dated September 11, 2003, Prudential notified Plaintiff that it was denying her LTD claim pending the submission of medical records from Plaintiff's treating neurologist.

61. On September 25, 2003, Plaintiff, through counsel submitted additional medical records for Prudential's review. Plaintiff also submitted a letter from her employer, Rheem, stating that Rheem had determined that Ms. Woodland is totally disabled.

62. By letter dated November 19, 2003, Plaintiff formally appealed the September 11, 2003, adverse determination.

63. By letter dated November 24, 2003, Prudential notified Plaintiff that it was upholding the termination of her claim for LTD benefits.

64. Notably, this adverse determination was dated November 24, 2003, but it was not post-marked until March 20, 2004, and it was not received by Plaintiff's counsel until March 22, 2004.

65. Prudential's November 24, 2003, denial letter ignored all of the commentary addressed in Plaintiff's June 5, and September 25, 2003, letters and it ignored the relevant medical information.

66. As a result, Plaintiff's counsel, by letter dated March 25, 2004, demanded that Prudential properly perform the last appeal review again.

67. By letter dated March 29, 2004, Prudential advised Plaintiff's counsel that it would reconsider Ms. Woodland's appeal as a first reconsideration, and that a decision would be rendered within 30 days.

68. By letter dated April 27, 2004, Prudential issued another denial of Plaintiff's claim for LTD benefits.

69. This denial was based on a file review conducted by Prudential's "clinical team."

70. Prudential never had Ms. Woodland examined by a physician.

71. As the "clinical team" never examined Plaintiff, its opinion is medically inferior and scientifically unreliable as compared to the opinions of the claimant's treating doctors.

Moreover, Prudential, who employs all members of the "clinical team" had a pecuniary interest in finding Plaintiff not disabled.

72. Additionally, Plaintiff applied for and was awarded Social Security Disability Benefits. Plaintiff's Notice of Award from SSA is dated June 11, 2002. Plaintiff was found to be disabled under the Social Security Act with an onset date of September 2001.

73. The definition of disability under the Social Security Act is more restrictive than the definition of disability found in the LTD Policy.

74. Prudential failed to reconcile the conclusion of the Social Security Administration, that Ms. Woodland is totally disabled, with its conclusion that she was not totally disabled under a far less stringent definition of disability.

75. In addition, Prudential receives a financial benefit from the Social Security Disability award as a result of the policy offset provisions.

76. Plaintiff appealed Prudential's adverse decisions on at least two separate occasions.

77. On both occasions, Prudential failed to properly and accurately review all of the submitted comments and medical documentation.

78. Even after Prudential agreed to review Plaintiff's claim as a first reconsideration, Prudential still failed to accurately review all of the documents in Ms. Woodland's claim file.

79. As a result of Prudential's inherently flawed review procedures, any further appeals of Plaintiff's LTD claim would be futile.

80. In seeking to further its own pecuniary interest, Prudential has denied Plaintiff of her right to a full and fair review of the denial of her claim as required by ERISA.

81. Prudential, as the insurer of the LTD Plan, pays LTD benefits out of its own coffers. As such, Prudential is operating under a significant conflict of interest which had a material effect on its decision-making on this claim.

82. Prudential, as the claims administrator for the LTD Plan, is a fiduciary, as defined by ERISA, and owes a fiduciary duty to Plan participants such as Plaintiff.

83. The LTD Plan, as an employee welfare benefit plan under ERISA, also owes a fiduciary duty to Plaintiff and other Plan participants.

84. The LTD Plan's fiduciary duty requires that it select an insurer/claims administrator who will: administer claims in accordance with plan terms; fairly and objectively apply plan terms and evaluate medical evidence; and comply with ERISA and its regulations.

85. By allowing Prudential to mishandle Plaintiff's claim as it did, the LTD Plan failed in its fiduciary duty to Plaintiff.

86. As such, the LTD Plan failed to adequately monitor, control and correct Prudential's improper actions.

87. Fiduciaries have a statutory obligation, in performing their duties, to act prudently and solely in the interest of Plan participants and beneficiaries, and strictly in conformance with the provisions of the Plan.

88. The adverse claim decisions rendered in the instant action have been made by Prudential, which has a pecuniary interest in denying claims. This pecuniary interest created a conflict of interest, which had a direct and important effect on Prudential's decision making on Ms. Woodland's LTD claim.

89. The adverse claim decisions rendered in the instant action have been made by Prudential, which has a pecuniary interest in denying claims.

90. Fiduciaries also have a statutory obligation to fairly interpret and construe the terms of the Plan and thereby make decisions in accordance with plan language.

91. Prudential's decisions were not supported by the medical evidence and were not supported by the applicable plan language.

92. Prudential's decisions in the instant claim were not supported by the evidence submitted with Plaintiff's claim.

93. Plaintiff was and remains disabled within the terms and conditions of the LTD Plan. Since Plaintiff was initially awarded LTD benefits from September 17, 2001, through October 28, 2001, Plaintiff is, therefore, entitled to the continued receipt of LTD benefits pursuant to the SPD.

## PLAINTIFF'S SECOND CAUSE OF ACTION
## FOR MEDICAL BENEFITS

94. Plaintiff repeats and re-alleges the allegations contained in the Paragraphs number "1" through "92," as if fully set forth herein.

95. The Medical Plan provided that, if coverage under the Medical Plan terminates as a result of a continuous total disability beginning prior to the termination date, Plaintiff is entitled to continued coverage under the Medical Plan for 12 months from the date that coverage was terminated.

96. The LTD Plan's wrongful termination of her benefits has deprived Ms. Woodland of her continued medical insurance coverage under the Medical Plan, and has caused her to incur medical expenses that would have otherwise been covered under the Medical Plan.

97. As a result of Plaintiff's disability and entitlement to benefits under the LTD Plan, as detailed *supra*, she is entitled to reimbursement of the medical expenses incurred during the 12 month period following the coverage termination.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

a. That the Court declare and then determine that, under the terms of the LTD Plan, Plaintiff's disability began on March 20, 2001, and that she continues, without interruptions, to be disabled within the terms of the LTD Plan;

b. That, after making such a determination, the Court grant Plaintiff appropriate legal relief and order Defendants, the LTD Plan and Prudential, to compensate Plaintiff for her disability in accordance with the terms of the LTD Plan, retroactive to October 28, 2001, including the reimbursement for any premiums paid on the LTD Plan during Plaintiff's total disability;

c. That, after making such a determination, the Court grant Plaintiff appropriate legal and equitable relief and order Defendants to compensate Plaintiff in accordance with the terms of the Medical Plan;

    d.    That the Court award Plaintiff her attorney's fees pursuant to ERISA, 29 U.S.C. §1132(g); and

    e.    That Plaintiff receive such other necessary, proper and equitable relief, including interest, costs and disbursements, as to which she may be entitled.

Dated: April 19, 2007
       Hauppauge, New York

                                        DeHAAN BUSSE LLP

By: _____
       John W. DeHaan (JWD 8863)
       300 Rabro Drive
       Suite 101
       Hauppauge, New York 11788
       Telephone:  (631) 582-1200
       Facsimile:  (631) 582-1228